# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHIGAN GEOSEARCH, INC. and THOMAS F. FODOR, | )<br>)<br>) |
| Plaintiffs, | ) 2:15-cv-1537<br>) |
| vs. | )<br>) |
| DAVID SCHER and THE EMPLOYMENT LAW GROUP, P.C., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(B)(2), 12(B)(3), 12(B)(6) AND 12(B)(7) OF THE FEDERAL RULES OF CIVIL PROCEDURE (ECF No. 10), along with a brief in support (ECF No. 11), filed by Defendants David Scher and The Employment Law Group. Plaintiffs Michigan GeoSearch, Inc. and Thomas F. Fodor filed a brief in opposition (ECF No. 13), and Defendants filed a reply brief (ECF No. 14). Accordingly, the motion is ripe for disposition.

**I. Background**

The following background is drawn from the First Amended Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion. As the law requires, all disputed facts and inferences are resolved in favor of Plaintiffs, the non-moving parties.

A. **Factual Background**

Plaintiff Michigan GeoSearch, Inc. ("MGI") is a corporation organized under the laws of Michigan and has offices located in Reno, Nevada where it also conducts business. Plaintiff Thomas F. Fodor is the President and CEO of MGI and resides in Reno, Nevada.

Defendant The Employment Law Group, P.C. ("ELG") is a law firm organized as a professional corporation with a business address in Washington, D.C. Defendant David Scher, Esq. is a Principal in ELG and resides in Washington, D.C.

On September 18, 2008, Plaintiffs entered into a contact with Serpentine Acquisitions, LTD, and its President, Ervin Booker, (together, "Serpentine"), known as the "Exclusive Strategic Alliance Agreement." The underlying terms and conditions of the Alliance Agreement relate to Serpentine's promise(s) to provide Plaintiffs with a $25 million cash infusion for several projects linked to oil exploration and related well ownership. As part of the cash infusion, an initial transaction fee of $1.5 million was to be paid out in installments. The first installment of $750,000 was to be placed in joint escrow. Plaintiffs agreed to release $400,000 to the trust account of Serpentine's lawyer upon satisfaction of a series of conditions. The remaining $350,000 would be released to the same trust account upon securing a "standby letter of credit." The Alliance Agreement further required that Serpentine's lender provide several verifications to Plaintiffs.

To facilitate the cash infusion, Plaintiffs deemed an escrow agreement (the "Escrow Agreement") necessary to protect them as Serpentine verified its funding. MGI hired Paul J. Staub Jr., Esq. to serve as its escrow agent. Relevant here, Staub is licensed to practice law in the Commonwealth of Pennsylvania, had law offices in Pittsburgh, Pennsylvania, negotiated,

drafted, and executed the Escrow Agreement at his law office, and maintained an escrow account at National City Bank in Pittsburgh, Pennsylvania.

For its part, Serpentine hired Scher to serve as its escrow agent and to communicate with Plaintiffs regarding Serpentine's abilities to meet its funding obligations.[1] Moreover, Serpentine and Defendant(s) were to provide the necessary documentation showing Serpentine's ability to fund Plaintiffs' projects and to repay them should the project not be funded.

On October 21, 2008, a Demand Note and Escrow Agreement was entered into by Staub and Scher as escrow agents for, respectively, MGI and Serpentine. Four days later, MGI wired $500,000 to ELG's account and began conducting research and other related oil exploration activities based upon Serpentine's representations that funding would be forthcoming.

Serpentine did not, however, fulfill the funding deadlines under the Alliance Agreement. In November 2008, Serpentine claimed funding was tied up due to unexpected banking changes. As such, the money being held in escrow was to be returned to MGI under the terms of the Alliance Agreement and the Escrow Agreement.

Around this time, Plaintiffs discovered that over $140,000 had been transferred out of ELG's account at Serpentine's direction. Pursuant to the parties' agreement(s), Plaintiffs' funds were not to move until the verification of Serpentine's funding had been completed and the release conditions of the Escrow Agreement had been satisfied. According to Plaintiffs, no conditions were satisfied under either agreement, and Defendants improperly released those funds in violation of their duties under the Escrow Agreement.

---

1. While Plaintiffs aver that "Serpentine hired Defendants David Scher, Esquire and his law firm, The Employment Law Group, P.C. to serve as its escrow agent to the Escrow Agreement," First Am. Compl. at 2, ELG is not a party to the Escrow Agreement, First Am. Compl., Ex. A. In fact, the Escrow Agreement makes no mention of ELG in any way. The Court is not required to "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004); *see also Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

Afterward, MGI (through Fodor) demanded that the remaining funds be returned. Over the next six months, partial funds were returned from Booker to MGI in small increments. No funds have been received from either Scher or ELG. Plaintiffs claim they are still owed in excess of $75,000.

**B. Procedural History**

Plaintiffs commenced this action on November 2, 2015 by filing a Complaint in the Court of Common Pleas of Allegheny County, alleging four counts against Scher and ELG: breach of contract, conversion, conspiracy, and fraud.[2] At Counts Two, Three, and Four, Plaintiffs demand an award that includes punitive damages. Serpentine and Booker are not named as parties in the Complaint.

Defendants thereafter timely removed the action to this Court. More recently, Plaintiffs filed an Amended Complaint in response to a motion to dismiss. Defendants have since filed another motion to dismiss to which the Court now turns.

**II. Discussion**

**A. The Amended Complaint & New Escrow Agreement**[3]

Defendants make much ado about the fact that Plaintiffs attached to their state court pleading – which must be verified under Pennsylvania Rule of Civil Procedure 1024 – an Escrow Agreement that includes a clause specifying Cook County, Illinois as the appropriate forum. Plaintiffs have, however, since filed an Amended Complaint and attached thereto an Escrow

---

2. Defendants do not argue that this case should be dismissed on statute of limitations grounds, but instead reserve the right to raise this affirmative defense in a responsive pleading. *See generally Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("In this circuit, however, we permit a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'") (quoting *Robinson v. Johnson,* 313 F.3d 128, 134-35 (3d Cir. 2002)) (internal quotation marks and citation omitted).

3. Although not dispositive of any issue, the Court deems it necessary to address this argument because it permeates nearly all of Defendants' positions. The Court also stresses that Plaintiff have already amended their pleading once as a matter of course.

4

Agreement that substitutes Allegheny County, Pennsylvania as the appropriate forum.[4] Even so, Defendants argue that dismissal is still warranted because Plaintiffs improperly replaced the so-called "Original Escrow Agreement" with a new writing after its "inherently terminal defects [were] referred to the Court" in the first motion to dismiss. The Court disagrees.

As the parties are well-aware, Defendants may amend their pleading once as a matter of course. Fed. R. Civ. P. 15(a). More importantly, "the amended complaint supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013). "[T]he fact that the original complaint was verified does not alter th[is] principle." *Id.* at 173 n.4. And "[t]hat is so even when the proposed amendment flatly contradicts the initial allegation." *Id.* at 172. Accordingly, the Court will not entertain Defendants' arguments regarding the Original Complaint / Escrow Agreement and will deny its motion to dismiss on this basis.

**B. Personal Jurisdiction**

Defendants also submit that this Court lacks personal jurisdiction over both Scher and ELG. The Court agrees.[5]

Once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or other competent evidence, sufficient contacts with the forum state to establish

---

4. In response to Defendants' motion, Plaintiffs explain that the so-called "Original Escrow Agreement" contained a scrivener's error from a draft leading up to the execution of the "New Escrow Agreement."

5. The Court recognizes that "[a] forum selection clause may act as consent to personal jurisdiction, thus obviating the need for a personal jurisdiction analysis." *Harfouche v. Wehbe*, 950 F. Supp. 2d 766, 770 (D.N.J. 2013) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982)). Defendants do not, however, advance this argument. Be that as it may, the forum selection clause is only contained in the Escrow Agreement between Non-party Staub and Defendant Scher.

5

personal jurisdiction.[6] *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). Rather than relying on the general averments in the pleadings, the plaintiff must establish those contacts with reasonable particularity. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992*); Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). In ruling on a motion to dismiss for lack of personal jurisdiction, though, "[t]he Court must accept the plaintiff's allegations as true and construe disputed facts in his favor." *Stillwagon v. Innsbrook Golf & Marina, LLC*, 2012 WL 501685, at *2 (W.D. Pa. Feb. 12, 2012).

"Under Federal Rule of Civil Procedure 4(e), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Eurofins Pharma Holdings v. BioAlliance Pharma S.A.*, 623 F.3d 147, 155 (3d Cir. 2010). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, the Court must consider "the relationship among the defendant, the forum, and the litigation" in order to determine if personal jurisdiction exists under the precepts of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *IMO Indus.*, 155 F.3d at 259 (citing *Shaffer v. Heitner*, 433 U.S. 186 (1977)).

Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court has explained that "minimum contacts must have a basis in 'some act by which the

---

6. Plaintiffs presumably attempt to meet this requirement by suggesting that "[they] possess multiple emails exchanged between the Parties and their personnel." Br. in Opp. at 6. But they fail to attach them to their brief. Nor do Plaintiffs provide affidavits or other competent evidence or request jurisdictional discovery.

defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Burger King*, 471 U.S. at 472) (additional quotation marks omitted).

Personal jurisdiction may be exercised under two distinct theories. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and may exist even if the plaintiff's claim arises from the defendant's non-forum related activities. *Id.* Specific jurisdiction, on the other hand, exists only "when the claim arises from or relates to conduct purposely directed at the forum state." *See Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008).

Defendants argue that Plaintiffs cannot prove sufficient contacts with the forum state – Pennsylvania – to establish general or specific jurisdiction. In their response, Plaintiffs make no effort to distinguish these concepts. Be that as it may, the Court will endeavor to do so.

### 1. General Jurisdiction

General jurisdiction is implicated when the claim arises from the defendant's non-forum-related activities. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 411 n.9 (1984). In such a case, the plaintiff "must show significantly more than mere minimum contacts." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The nonresident's contacts to the forum must instead be "continuous and substantial." *Id.*; *Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 541 (3d Cir. 1985). The threshold for

7

establishing general jurisdiction is very high and requires a showing of "extensive and pervasive" facts demonstrating connections with the forum state. *Reliance Steel Prods. Co. v. Watson, Ess. Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

The test for general jurisdiction is not met in this case. ELG is not incorporated in Pennsylvania, nor does it maintain an office or an agent here. Scher also does not reside or conduct business in the Commonwealth. "There is no basis, on this record, to conclude that [Defendants'] contacts with Pennsylvania are sufficiently continuous and substantial to establish general jurisdiction." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 211 (3d Cir. 2013). The Court must therefore address whether Defendant(s)' contacts establish specific jurisdiction.

### 2. Specific Jurisdiction

To decide whether specific jurisdiction exists, the Court must "undertake a three-part inquiry." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "First, the defendant must have 'purposefully directed [his] activities' at the forum." *Id.* (quoting *Burger King*, 471 U.S. at 472). "Second, the litigation must arise out of or relate to" the defendant's forum-directed activities. *Id.* (citing *Helicopteros*, 466 U.S. at 414; *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007)). "And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" *Id.* (quoting *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The latter standard is discretionary, but the Court of Appeals for the Third Circuit has "generally chosen to engage in [it] in determining questions of personal jurisdiction." *Pennzoil*, 149 F.3d at 201 (citations omitted). Furthermore, "[b]ecause this analysis depends on the relationship between the claims and contacts," the Court must "evaluate

specific jurisdiction on a claim-by-claim basis." *Marten*, 499 F.3d at 196 (citing *Remick*, 238 F.3d at 255-56).

"The threshold requirement is that the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *D'Jamoos ex rel. Estate of Weingeroff*, 566 F.3d at 103 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant need not be physically present in the forum to satisfy this requirement. *Id.* (citing *Burger King*, 471 U.S. at 476; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)). "But what is necessary is a deliberate targeting of the forum. Thus, the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *O'Connor*, 496 F.3d at 317 (quoting *Hanson*, 357 U.S. at 253). "And contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* (citing *Gehling*, 773 F.2d at 542-43). As the Supreme Court has emphasized, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 462. In such case, it is not unreasonable to require a contracting party who "'deliberately' [ ] engaged in significant activity within a State . . . or has created 'continuing obligations' between himself and residents of the forum," to submit to suit in that forum as well. *Id.* at 475-76 (citations omitted).

"A slightly refined version of this test applies to intentional tort claims." *O'Connor*, 496 F.3d at 317 n.2 (citing *Calder v. Jones*, 465 U.S. 783 (1984); *IMO Indus.*, 155 F.3d at 254). Under what has come to be called the "effects test," derived from the Supreme Court's decision in *Calder*, 465 U.S. at 788-90, "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts such that the

9

'minimum contacts' prong of the Due Process test is satisfied." *Imo Indus.*, 155 F.3d at 260 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)). To establish specific jurisdiction under the *Calder* "effects test," a plaintiff must establish that:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Imo Indus.*, 155 F.3d at 265-66.

Although the "effects test" provides an alternative avenue for establishing specific jurisdiction, the Court of Appeals has interpreted it narrowly. *See id.* at 265. As the Court of Appeals has emphasized, "*Calder* did not change the fact that even in intentional tort cases the jurisdictional inquiry focuses on the relations among the defendant, the forum, and the litigation," and "[n]or did *Calder* carve out a special intentional torts exception . . . , so that a plaintiff could always sue in his or her home state." *Id.* *Calder* did, however, "recognize that under certain circumstances, the 'plaintiff's residence in the forum may, because of the defendant's relationship with the plaintiff, enhance the defendant's contacts with the forum. [P]laintiff's residence may be the focus of the activities of the defendant out of which the suit arises." *Id.* (quoting *Keeton*, 465 U.S. at 780).

Accordingly, "the *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *Id.* at 265. Generally, "this will require some type of 'entry' into the forum state by the defendant." *Id.* "While knowledge

that the plaintiff is located in the forum is necessary to the application of *Calder*, . . . it alone is insufficient to satisfy the targeting prong of the effects test." *Id.*

As a threshold matter, Plaintiffs have not shown that either Scher or ELG purposefully directed their activities at the forum – *i.e.*, Pennsylvania. Plaintiffs only claim that Scher (a Washington D.C. lawyer who Defendants lump together with ELG as if they were one indistinguishable entity) served as the escrow agent for Serpentine (reportedly, a Canadian company) and entered into an Escrow Agreement with Non-Party Staub (a Pennsylvania lawyer) who served as the escrow agent for Plaintiffs (a Michigan corporation and residents of Reno, Nevada). The only connection of Scher to Pennsylvania is that he purportedly communicated via e-mail with Staub while he was in his Pittsburgh office – a bare allegation which is only raised in Plaintiffs' brief in response. In fact, the only mentions of Pennsylvania in the First Amended Complaint are those references to Staub. And the only link between ELG and Pennsylvania is that a Principal of the firm communicated with a resident of the Commonwealth. Although mail and telephone communications and the like sent by [a] defendant[ ] into the forum may count as minimum contacts that support jurisdiction, see *Grand Entm't Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993), they do not support specific jurisdiction in this case." *Asanov v. Gholson, Hicks & Nichols, P.A.*, 209 F. App'x 139, 141-42 (3d Cir. 2006). In other words, nowhere in the First Amended Complaint do Plaintiffs allege that either Defendant deliberately targeted the forum.

Nor do Plaintiffs allege that their claims arise out of or relate to Defendant's purported forum-directed activities. Plaintiffs' causes of actions do not arise from Scher's alleged e-mail contacts with Staub in Pennsylvania, such as "a lawsuit relating to contract negotiations over the phone or fax might." *Id.* Instead, their lawsuit arose from Defendants' purported breach of

contract, conversion, fraud, and conspiracy, which occurred in a location not specified in the First Amended Complaint (although, presumably in Washington, D.C. where Scher and ELG reside). *C.f.* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Nowhere do Plaintiffs even attempt to allege that Scher did anything related to the Escrow Agreement in Pennsylvania. And there are no factual allegations that seek to establish that ELG did anything at all in Pennsylvania.

Where, as here, "a particular defendant has no contact with the forum in the course of the alleged tortious conduct, it cannot be said that he has purposefully directed his activities at the forum so as to warrant the exercise of specific jurisdiction." *Allegheny Valley Bank of Pittsburgh v. Potomac Educ. Found., Inc.*, No. CIV.A. 13-818, 2015 WL 1021097, at *8 (W.D. Pa. Mar. 9, 2015). As such, the Court will grant Defendnats' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

### C. Leave to Amend

At the conclusion of their brief, Plaintiffs tack on a one-sentence request for leave to amend. Pls.' Br. in Opp. at 10 ("[A]lthough Plaintiff believes [*sic*] the Amended Complaint adequately states claims against Defendants, Plaintiffs request leave to amend their Amended Complaint if the Court finds it necessary to dismiss any of their claims."). This "'single sentence, lacking a statement for the grounds for amendment and dangling at the end of [their] memorandum, [does] not rise to the level of a motion for leave to amend.'" *Ramsgate Court Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (quoting *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)).

Without having been provided a proposed amended complaint or at least a description of how amendment would confer personal jurisdiction, this Court has "nothing upon which to exercise its discretion" to permit a curative amendment. *See id.* (citing *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)); *see also Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (finding no error in the district court's decision to deny Plaintiff's motion to amend its complaint where it "made only a general request for leave to amend and did not identify how amendment would confer personal jurisdiction over [the defendant]"). Therefore, Plaintiffs' last-gasp request for leave to amend will be denied.

### III. Conclusion

For the reasons hereinabove stated, the Court will grant Defendants' motion to dismiss. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHIGAN GEOSEARCH, INC. and THOMAS F. FODOR, | )<br>)<br>) |
| Plaintiffs, | ) 2:15-cv-1537<br>) |
| vs. | )<br>) |
| DAVID SCHER and THE EMPLOYMENT LAW GROUP, P.C., | )<br>)<br>) |
| Defendants. | )<br>) |

## ORDER OF COURT

AND NOW, this 23rd day of March, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(B)(2), 12(B)(3), 12(B)(6) AND 12(B)(7) OF THE FEDERAL RULES OF CIVIL PROCEDURE (ECF No. 10), along with a brief in support (ECF No. 11), filed by Defendants David Scher and The Employment Law Group ("ELG") is **GRANTED**. The Clerk shall docket this case **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: Matthew S. Marquette
Email: mmarquette@smgglaw.com
Jordan P. Shuber
Email: jshuber@smgglaw.com

Kiely A. Lewandowski
Email: klewandowski@eckertseamans.com

(via CM/ECF)